## MAY TERM, 1799.

### J. and D. BRADFORD *v.* ABRAHAM McCLELLAND, et al.

*In Chancery.*

This was an appeal from the court of quarter sessions of Scott county.

Abraham McClelland, as heir-at-law of John McClelland, deceased, on the 13th day of January, 1780, obtained from the commissioners the following certificate of his right to a settlement and pre-emption, to-wit:

"Abraham McClelland, heir-at-law to John McClelland, deceased, by Robert Patterson, this day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, lying on the north fork of Elkhorn creek, adjoining the land of the said

McClelland, whereon he had a station, by the said deceased raising a crop of corn in the country in the year 1776, and residing twelve months before the year 1778. Satisfactory proof being made to the court, they are of opinion that the said McClelland has a right to a settlement of 400 acres of land, to include the above location, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 13th day of February, in the same year, entered his certificate with the county surveyor in the following words, to-wit:

"Abraham McClelland, heir-at-law to John McClelland, enters 400 acres by certificate, etc., lying on the north fork of Elkhorn, joining the lands of the said McClelland, whereon he had a station."

And a pre-emption warrant having been obtained, John Floyd, for and on behalf of the said Abraham, on the 12th day of December, in the year 1782, made the following entry thereon, to-wit:

"John Floyd, assignee of Abraham McClelland, enters 1,000 acres of land upon a pre-emption warrant, No. 1,409, on the north side of the north fork of Elkhorn, opposite to the mouth of the Royal Spring branch, and to extend up and down the north side of the creek, and northwardly for quantity."

And the said settlement and pre-emption being surveyed in the manner described on the connected plat, patents issued and the legal title became vested in the said Abraham, who engaged to convey a part of the pre-emption to the other appellees.

William Hogan, on the 28th day of January, in the year 1780, obtained from the commissioners the following certificate for a settlement and pre-emption, to-wit:

"William Hogan by James Hogan, Jr., this day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, on account of raising a crop of corn in the country in the year 1776, lying adjoining on the lower side of the land claimed by James Hogan, Sr. Satisfactory proof being made to the court, they are of opinion that the said Hogan has a right to a settlement of 400 acres of land, to include the above location, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 7th day of February, in the same year, made the following entry on his certificate with the county surveyor, to-wit:

"William Hogan enters 400 acres by certificate, etc., lying adjoining on the lower side of the lands claimed by James Hogan, Sr."

And on the first day of June, in the same year, John and Daniel Bradford, as assignees of the said William Hogan, entered their pre-emption warrant with the county surveyor, in the following words, to-wit:

"John Bradford and Daniel Bradford, assignees, enter a pre-emption warrant of 1,000 acres adjoining William Hogan's settlement on the lower side, and to run down the creek for quantity."

And the said John and Daniel Bradford, having surveyed the pre-emption in the manner described on the connected plat, obtained a grant of earlier date than that issued on the claim of the appellees.

The annexed connected plat, No. 32, was returned in this cause, of which the following is an explanation:

A B V, with the meanders of Elkhorn, Abraham McClelland's settlement, according to survey. A B C D E F, Abraham McClelland's pre-emption according to survey, entered in the name of John Floyd. 8 9 10 11, Abraham McClelland's pre-emption according to the decree of the inferior court. 10 12 F 13, the interference according to the said decree. R R R R, James Hogan's settlement as surveyed. R R S I, William Hogan's settlement as surveyed. I G F H, the pre-emption of John and Daniel Bradford, as assignees of William Hogan, according to survey. 3 4 5 6 7, Royal Spring tract, on which John McClelland had a station. 1, the Royal spring. 2, the mouth of the Royal Spring branch. The large creek is the north fork of Elkhorn. The branch passing by James and William Hogan's settlements to A, Dry run. 14 to 15, Lane's run. 16 to 17, Miller's run. 18, Cherry's run. W, Little north fork of Elkhorn.

The following certificates and entries were used as evidence at the trial.

"January 28, 1780. James Hogan, Sr., this day claimed a settlement and pre-emption by James Hogan, Jr., in the district of Kentucky, on account of raising a crop of corn in the year 1776, lying on the north side of Elkhorn creek, on the first big fork below Dobbins' claim, including a cabin on the west side of the said fork at James Forbes' camp. Satisfactory proof being made to the court, they are of opinion that the said Hogan, Sr., has a right to a settlement of 400 acres of land, to include the above location, and that a certificate issue accordingly."

"February 7, 1780. James Hogan, Sr., enters 400 acres by certificate, etc., lying on the north fork of Elkhorn, on the first big creek below Dobbins' claim, including a cabin on the west side of the south fork at James Forbes' camp."

"January 11, 1780. John Dobbins, by John Smith, this day claimed a pre-emption of 1,000 acres of land, at the state price, in the district of Kentucky, lying on a creek running into the north fork of Elkhorn, about five or six miles up the creek, including an old camp made by Daniel Boone and William Bryan, by marking and improving the same in the year 1775. Satisfactory proof being made to the court, they are of opinion that the said Dobbins has a right to a pre-emption of 1,000 acres of land, to include the above location, and that a certificate issue accordingly."

And the deposition of Daniel Boone was read, in which he stated

that he located a pre-emption of 1,000 acres for John Dobbins, to include a camp made by himself and William Bryant. That the said camp lay on the first big run or creek that enters in on the north side of North Elkhorn, below the little north fork of Elkhorn, and that there were one or two big runs or creeks below, between that run or creek and Dry run.

The court of quarter sessions of Scott county, at the November term of said court, in the year 1797, pronounced the following decree, to-wit:

The court are of opinion that the pre-emption under which the complainants claim, ought to have been surveyed as follows, to wit: To lie on the north side of Elkhorn, and to run so far up and down the creek an equal distance from the nearest point to the Royal Spring branch, as will make 400 poles east and west, and from each end of that line to run north so far that a line east and west from the terminations of the last mentioned line shall include the quantity. It is therefore decreed and ordered by the court, that the complainants do recover of the defendant all the land which will be included in the said pre-emption survey, when run agreeably to the foregoing opinion. And it is further ordered and decreed, that the surveyor of this county do go on the lands in controversy on the —— day of —— next, if fair, if not on the next fair day, and lay off, circumscribe, and mark by certain metes and bounds the aforesaid lands agreeably to the above decree, and make report thereof to the first day of the next court of quarter sessions for this county, in order to enable the court to make a final decree herein.

And at the March term of the said court, the surveyor having made his report, the defendants were directed to convey the interference, which was 195 acres, by the metes and bounds contained in the said report. From which decree the defendants prayed an appeal.

And now at this term, the arguments having been heard, the following decree was pronounced:

BY THE COURT.—We are of opinion that the court of quarter sessions have erred in construing the entry of the appellee, inasmuch as no regard was paid to the course of North Elkhorn called for therein; whereas it seems to us from the expressions used in the entry, that the survey made thereon should not only lie on the northwardly side of the creek and bind on the same, but that it should be as near a square as the nature of the case will permit,

and the back line thereof be parallel to the general course of the creek so far as it binds thereon; also, that the upper and lower lines, when indefinitely extended, should be at equal distances from the mouth of the Royal Spring branch. Therefore it is decreed and ordered, that the decree aforesaid be reversed, annulled, and set aside, and that the suit be remanded to the aforesaid court of quarter sessions, who are directed to have the appellees' pre-emption surveyed agreeably to the foregoing opinion and directions of this court. And it is further decreed and ordered, that the appellants recover of the appellees their costs in this behalf expended, which is ordered to be certified to the said court of quarter sessions.